The opinion of the Court was delivered by
Cheyes, J.
This is an original motion, in this Court, for leave to enter up judgment for the plaintiffs on the special verdict. The only question I shall consider at any length is, whether the statute having begun to run against the ancestor of the plaintiffs who claim as heirs at law to him, their infancy stops the progress of the statute ? In other words, whether, when the operation of the statute once begins, it does not continue to run on, notwithstanding* any intervening disability? Prima facie it ought to be presumed, that we were about to discuss fixed principles. Our Act of Assembly was passed as early as the year 1712,[1] now more than a century; and until the case of Poseur. Daniel,[2] I cannot but believe that the most learned members of the profession considered the point to be as well settled, as that the heir at law, under the rights of primogeniture, was the first-born son. For this opinion, however, I can adduce no express authority. We have few printed decisions, and in their absence, the clearer and more undoubted a principle is, the more difficult it is to be proved. A point agitated, by some doubt, revives the consideration of the subject, and the recollections are more easy and more frequent, as the discussions may be more or less recent. But there is something in the nature of the thing itself, which furnishes, I think, the proof I want. It is impossible, I think, it can be contended, that it was a point never thought of; the necessity of considering it would occur in almost every conveyance of real estate. It must have been decided, or conceded as beyond doubt, one way or the other. The business of the profession could not otherwise have gone on. *180 It was necessary to have an opinion upon it, in the investigation of almost every title ; for with us the statute of limitations is the basis of title to the most valuable landed possessions in this State; of almost every lot, for example, in the city of Charleston. Now let me ask if any gentleman of the bar ever deemed it necessary, after having discovered that the statute had once begun to run, to inquire whether there did not occur subsequent disabilities ? Whether such an investigation would not frequently be impossible ? The real estate of this State often changes hands many times in a year. According to the decisions of onr Courts, where two or more are interested as coparceners, or joint tenants or tenants in common, if one be under the disability of infancy, it saves the rights of the others from the effect of the statute. Since the abolition of the rights of primogeniture, almost every death (whether it ^create a case of testacy or intestacy, for the spirit of our laws for the equal distribution of the intestates’ estates, has become habitual in testamentary dispositions,) leaves cases of infant claimants; and before the disability of all is removed, a new generation of disabilities occurs, and so on, ad infinitum — how many genealogies will it be necessary to trace; and under the migratory and unsettled habits of our people, where will the information be found ? What member of the profession can say, a title which is submitted to him is good ? It will not avail him, that he can trace it up to an original grant; this was the fact in Rose v. Daniel, 3 Brevard’s Reports, 438. It will give no assurance, that an individual has been five years in undisturbed possession, and that no claimant can be imagined or discovered; this, also, was the fact in Rose v. Daniel. Nay, thirty years of undisturbed enjoyment, will not give any assurance to be relied upon; even this, if not literally, was substantially, the fact in Rose v. Daniel. What possession will give security against dormant claims, and compound cases of disabilities ? Yet the statute of limitations has been emphatically, and ought truly to be called a statute of repose.
I will now proceed to consider the grounds on which I understand the case of Rose v. Daniel to be supported. And first, I understand, that it is denied or doubted that the English decisions are contrary to the decision in that ease. On this point, I have no doubt. The principle of the English decisions is drawn from the policy of all the statutes, and no unimportant variation in words (and there is no important variation,) is allowed to vary the construction of them. The generality of the rule doubles the value of it; and they say it is absurd and dangerous, (Hickman v. Walker, Willes’ Rep. 28; Duroure v. Jones, 4 D. & E. 308,) to have two rules on the subject. Taking this to be the principle, it is vain to argue, that the case of Duroure v. Jones was a decision under the statute of fines. It applies with equal strength to the statute of of James I., ch. 16. But the remarks to which this case has given rise, wou^ *lead to the supposition, were the contrary not very clear, the principle was first recognized in that case, and that this question depended upon it alone. But nothing can be more incorrect. It was recognized as clear law, fifty years before the decision of that case, by the highest authority. Lord Chief Justice Willes, in the case of Hickman et al. v. Walker, Willes’ Rep. 21, (where it was contended, in an action of assumpsit, that a plea of the statute referred to the probate, the plaintiffs being executors, and not to the accruing of the cause of action,) *181 said, “ and this motion seems the more absurd, because it is directly contrary to the rule concerning the limitation of actions brought for real estates, founded on the same statute;” namely, the statute of James I., ch. 16. It has been argued, that Duroure v. Jones, was decided since the Revolution, and therefore is not authority with us; but the last case shows that the principle was clear and undoubted law forty years before the Revolution.
But if it rested on the authority of the case of Duroure v. Jones alone, I have the highest authority this country can afford, for saying that it should govern the acts of the legislatures of the States, corresponding with the statutes of James. Chief Justice Marshall, delivering the unanimous opinion of the Supreme Court of the United States, says, Walden v. The Heirs of Gratz, 1 Wheaton’s Rep. 296, “The counsel, for the defendants in error, have endeavored to sustain this opinion (the opinion of the Circuit Court) by a construction of the statute of limitations of Kentucky. They contend, that after the statute has begun to run, it stops, if the title passes to a person under any legal disability, and recommences after such a disability shall be removed. This construction, in the opinion of the Court, is not justified by the words of the statute. Its language does not vary essentially from the language of the statute of James, the construction of which has been well settled ; and it is to be construed as that statute, and as all other acts of limitations founded on it have been construed and the only authority he refers to in support of this *opinion, is Duroure v. Jones. But this is not all the support which this case has received. The case and the principle are recognized and decided to be applicable to the statute of James, in the case of Cotterell v. Dutton, 4 Taunt. 828, by the unanimous opinion of the Court; and what is not of small importance, it was supported by the authority of the great learning and eminent abilities of Sir Yicary Gibbs, (now Chief Justice of the Common Pleas,) who lays it down as a universal rule, that “ when once the statute begins to run, nothing stops it.” The case of Cotterell v. Dutten is precisely the case before us, except that it was the case of a tenancy in tail, which makes this a stronger case than that; for it has been contended, that estates tail were not within the statute. Martindale v. Troop et al., 3 Harris & McHenry, 244. What the English law was before the Revolution, and what it is now under the statute of James, and what its application ought to be to our statute, I feel confident, can no longer be a subject of doubt. The point has been decided in the same way in Massachusetts, in the case of Dow v. Warren, 6 Mass. Rep. 328.
In Connecticut, although the point has not been decided, the opinions which have been expressed, are to the same effect, Bush v. Bradley, 4 Day’s Rep. 307; and in another case, Eaton v. Sandford, 2 Day’s Rep. 526, it is conceded by counsel to be the law.
The law of Hew York is the same. In the case of Peck v. Randall, 1 John Rep. 175, Chief Justice Kent says, “the general rule is, that when the statute of limitations once begins to run, it continues to run on, notwithstanding any subsequent disability.” That was a case of assumpsit; but we have seen, that there is no distinction, unless it be furnished by the peculiar terms of our statute, if there be any thing peculiar in them, which we will hereafter consider.
*182 The law of Pennsylvania is the same. In the case of The lessee of Hall v. Vandergrift, (3 Binney, 385,) Chief Justice Tilghman says, “ It is the spirit of the act of limitations, to allow twenty-one years from the time, *that a person might make an entry, or support an action, understanding always that when the twenty-one years once begin to run, they shall not be suspended by infancy, coverture, or any other circumstance.”
Such seems to be the law of Yirginia. Judge Roane, in Fitzhugh v. Anderson, and others, (2 Henning and Munford, 306,) says, “the case of Gray v. Menden, (1 Stra. 556,) shows, that when five years have once commenced, they run over all mesne acts; such as coverture, infancy, &c. ” This was a case of personal property, but, as I have already remarked, the books make no distinction.
Such is the law of North Carolina, as well in relation to actions concerning real estate, as other actions. (Andrews v. Mulford, 1 Haywood’s Rep. 322. Do. 416. Coomer v. Little, Cameron and Norwood’s Rep. 92.)
Such also is the law of Kentucky, as we have seen from the decisions in the Supreme Court of the United States, (1 Wheat. 296,) and I shall be surprised if it be not found to be the law of every State in the Union.
In many of the eases from our sister States, the judges are found deprecating the consequences of a different rule ; and Chief Justice Marshall, we have seen, says, that all acts of limitations founded on the statute of Janies, are so construed. And while they are authorities in point, the uniformity of these decisions furnishes an unanswerable argument in favor of the policy of the construction which they give. Indeed this rule, founded in perfect wisdom in England, for the reasons which I have before stated, as well as those which I stated in the case of Adm’r of Adamson v. Smith,[1] decided in this Court, in January last, is, in this State, and all those where there is an equal distribution of the real estates of intestates, not only wise, but absolutely indispensable. In the case last mentioned, we applied the rule to a case of insanity, which presents by far the most helpless and pitiable case of human calamity and feebleness ; and we are authorized by Chief Justice Willes, to say, that it is absurd, and by Lord Kenyon, that it is dangerous, to have two rules on the subject.
*But it is alleged, that our Act of Limitations is essentially different from the statute of James.
1. Because it does not contain the word “ first,” in connection with the words used to express the accruing of the title. Let it be remarked, that the rule which has been so well established, applies to all the clauses in the statute, among which there is no other that contains this word. If it be not essential in all, it can be so in none. Accordingly the very able and ingenious counsel who argued this ease for the plaintiff, yielded this argument, and declared, that “ the word first was altogether unimportant.” Our Act without this word must of necessity (the necessity of giving effect to the clear words of it) receive the same construction, as if it had this word. The words of our Act are, “ if any person to whom any right or title to lands, &c., shall descend or come, do not prosecute *183 the same within five years after such right or title accrued, that then he or they, and all claiming under him and them, shall be forever barred, &c.” If the person or persons be not the first to whom the right or title descend or come, then these words, “ and all claiming under him and them,” would have no operation ; for it would descend or come to them all in succession ; but confining the descending or coming to those to whom the title shall first descend or come, all the words have an operation, as it is very clear they were intended to have. If the word first were inserted, then, in the Act, it would leave the meaning the same.
This argument applies with much greater appearance of reason to the clauses which relate to actions, merely personal. The words of which are, “ within four years after the cause of such action, &c.” Now it might be argued with some semblance of correctness (as has been done, Willes’ Rep. 28, and other authorities,) that the action accrued to the endorsee, by the endorsement, to the administrator, by his letters of administration, aud to the executor, by the probate of the will. There are no words in these clauses which control this construction ; but to give this construction, would defeat the object of the law ; so it would in the case before us. * It would do more. It would violate the clear grammatical sense of the words.
2. It is argued in Rose v. Daniel, that in the exception which relates to infants, nothing is said as to the accruing of the right; from which, I suppose, it is intended to be inferred, that though it had accrued to another, and the statute had begun to run against that other, yet that they are not bound. The word accrue is not used, but equivalent words are used in the body of the section to which the saving relating to infants refers. These words are “ descend or come." They are precisely equivalent to those in the statute of James; and the only difference from that statute, is, that in the latter, these words are reiterated in the proviso, and then the words saving the rights of infants, &c., refer to the words thus repeated, while our Act saves the rights of infants by words of exception referring to the body of the clause.
The saving to infants, in the clause of the Act under consideration, is precisely the same as the like saving in cases of trespass, detinue, &c., which has received a construction, according to all authorities, directly contrary to that of Rose v. Daniel.
These distinctions are, I conceive, clearly proved to be without foundation.
But it was said in Rose v. Daniel, that this construction would be a mockery of protection. If this were true, still it is all the law intended to grant to them. But how is the fact ? The scheme of the law (as well our Act as the statute of James, and all the other Acts of Limitation of which I have been able 'to gain any knowledge) is, where the right descends on a person of full age, to give him and those claiming under him, the time limited by the Act, and no more ; and where it descends on a person under age, to give him until full age, aud the period limited by the Act besides. In the latter case, he has five years after he comes of age, which is the full time which would have been allowed him if he had been of age when the descent was cast. This is no mockery of protection. As to the case where the descent is cast on a person of full age, if he *184 *die suddenly it may produce a hard case. But such cases will be very rare. If the vigilance of the ancestor should be defeated, the guardian of the infant may supply it. On the other hand, after the statute had run on almost to its completion, it would become a dead letter, and all the uncertainty, difficulty and confusion of titles to real estates, which we have before mentioned, would follow. To provide for this possible case, this great and beneficent statute is to become a nullity. Besides, it- is forgotten, that as many infants would be injured as protected. There are as many infants in possession of lands, who require the operation of the statute to protect their possessions, as there are out of possession who require its abrogation, in effect, to protect their claims ; and melior est conditio possidentis. This is not a quibble upon the maxim, but is expressive of the fundamental principle of the Acts of Limitation. I agree, that the period fixed by our Act of Limitation, for the bringing of actions for the recovery of lands, is quite too short. In most of the States the period is twenty years. That may be too long for the state of our country. But this is a question with which we have nothing to do. It is for the consideration of the Legislature, yet, I trust, they never will enlarge the period, if the principle of Rose v. Daniel prevail.
Much prejudice prevails against the statute of limitations. Formerly, even the Courts of law resorted to a species of artifice to exclude its operation ; even the plea was sometimes excluded under any slip of the attorney when any other plea would have been received. But it is otherwise now. The Courts now consider, that “ the statute of limitations is entitled to the same respect as other statutes, and ought not to be explained away,” (Clementson v. Williams, 8 Cranch, 74.) The operation and causes' of this prejudice, as well as the necessity and value o'f these laws, are well expressed in one of those luminous and profound discourses which precede the several laws which compose the French code civil. The orator, in introducing the law relative to prescription, which is equivalent to our statute of limitations, (5 Tom. Code Civil, 347,) says, “At the abstract *idea of prescription, it would seem, Justice ought to bealarmed; it would seem, she ought to repel the man, who, by the single fact of possession, and without the consent of the owner, should withhold his property and convert it to his own use ; and that she ought to condemn him who, called to fulfil his engagement of a date more or less ancient, refuses to perform it, and yet presents no evidence of its 'discharge. Can one set up prescription and not appear in the first instance a robber, and in the other a faithless debtor, who enriches himself at the loss of his creditor ? Notwithstanding, of all the institutions of municipal law, prescription is the most necessary to social order. And far from regarding it as a rock on which justice may be shipwrecked, it is necessary to unite with philosophers and lawyers to maintain it as a necessary safeguard of the rights of property.”
It was argued, that the decision in Rose vs. Daniel, was made by a majority of the whole bench. There were indeed four judges to two, the bench then consisting of si*; yet the change of a single vote would have altered the decision ; and there are wanting several other circumstances which give authority to decisions. There were several other points in the cause ; the case is not yet decided ; many of the most learned of the the profession, and a highly respectable minority of the bench, were en *185 tirely dissatisfied with the decision. These are not reasons why it should not be highly respected, but why it should not be deemed to settle the law without further consideration ; especially if it go to prostrate, what I think I have made manifest, has long been the settled law under which the profession has practiced, in which the Courts have acquiesced, and estates have been settled and secured. Surely it is not supposed, that a decision of the Constitutional Court may not be examined ? No research is necessary to furnish examples of the reconsideration of opinions quite as solemn as that of Rose v. Daniel. Corbett v. Poelnitz, 1 T. R. 5, was reconsidered and reversed in Marshall v. Rutton, 8 T. R. 545. Walton v. Shelly, *1 T. R. 296, was reconsidered and reversed in Jordaine v. Lashbrooke, 7 T. R. 597.[1] Gourdinr. Theus,\n our own courts, was reconsidered and reversed in Reid v. Eifert.[2] It is unnecessary to multiply examples. It would be alarming indeed were it otherwise. The settled law of ages might be set aside by an incautious decision.
If may be said, the law will not be settled by this decision. I do not desire it. The point will be open for further consideration, with all the lights which these examinations may throw upon it. If Rose v. Daniel was correctly decided, there can be no doubt it will be confirmed. If not, it will be greatly important to the profession and the country, that it should be reversed; and it will be fortunate, that it has thus early been reconsidered. I agree that every decision of this Court should be held in great reverence, and ought not to be disturbed but for very weighty reasons. Such, I think, did exist in this case.
I am clearly and decidedly of opinion, that the statute, having begun to run against the plaintiffs’ ancestor, under whom they claim, was not stopped by the subsequent disability of their infancy.
The other question, which ought to have been the first in order, viz.: whether, after a title under the statute of limitations has vested in one, it may be used to defeat the plaintiffs’ title, though the defendant do not claim under the person in whom a title was vested under the statute ? was decided in the case of Mazyck v. Burt, in this Court, and I think correctly. A title under the statute, in a third person, which would bar the plaintiffs, if such third person were the defendant, will defeat his recovery against any other person.
Nott and Johnson, JJ., concurred.

 2 Stat. 583.

 3 Brev. 438; 2 Tread. 549.

 2 McC. R. 269.

 3 Brev. 153.

 Post. 374.

 Also 1 McC. 64, 139; 3 McC. 151; Act of 1824, 6 Stat. 237, § 5; 4 McC. 479; 4 Rich. 619.